IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00388-MOC-WCM

| | |
|---|---|
| JASON MICHAEL WHEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 11, 14), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.   Procedural Background

In August of 2017, Plaintiff Jason Michael Wheeler ("Plaintiff") filed an application for disability insurance benefits, alleging disability beginning July 15, 2013. Transcript of the Administrative Record ("AR") 185-186.

On December 27, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 9-27. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "spinal disorder and ankylosing spondylitis, status-post left hip replacement." AR 14. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that, through the date Plaintiff was last insured (December 31, 2018), Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b)[1] except never climbing ropes/ladders, occasionally climbing steps, balancing, stooping, crouching and crawling and frequent kneeling. He can frequently reach overhead. He must avoid exposure to hazards.

AR 15.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 21-22.

---

[1] 20 C.F.R. § 1567(b) defines light work as work which involves lifting no more than 20 pounds at a time "with frequent lifting or carrying of objects weighing up to 10 pounds." "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

### III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ, when formulating Plaintiff's RFC, failed to weigh certain opinion evidence properly and failed to consider Plaintiff's use of a cane.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a

3

federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

### A. Consideration of the Opinion Evidence

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has "fundamentally changed how adjudicators assess opinion evidence." Bright v. Saul, 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020) (citing 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §404.1520c(a) (effective March 27, 2017)). Specifically, "longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed" and an ALJ is now required to "consider and articulate in the administrative decision how persuasive he or she finds each medical opinion…" Id.

"In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. Supportability is an internal check that references objective medical evidence and supporting explanations that come

4

from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Id. (internal citations omitted).

Plaintiff argues that the ALJ erred in his consideration of the opinions of Plaintiff's primary care provider, Dr. Todd Davis, and Plaintiff's rheumatologist, Dr. Najeeb Ghaussy.

### 1. Dr. Todd Davis

In a July 29, 2016 letter, Dr. Davis stated that Plaintiff's arthritis "limits" his ability to push, pull or go up and down stairs; and that Plaintiff could not "carry, lift or perform any active duty requiring carrying or lifting." AR 582. On July 1, 2019, Dr. Davis completed a medical report indicating that Plaintiff was limited to sitting for twenty minutes at a time and standing for 15 minutes at a time, and that Plaintiff was not a candidate for vocational rehabilitation. AR 584. A July 9, 2019 treatment note electronically signed by Dr. Davis provided that Plaintiff "is totally disabled because he can no longer lift[,] he can't sit for more than 20 min a time[,] can't stand for more than 20 min a time[,] cannot bend[,] cannot carry anything more than 10 lb[,] cannot do stairs well[,] cannot do so [sic] ladders at all." AR 690.

5

The ALJ found these opinions to be inconsistent with Plaintiff's treatment records and therefore unpersuasive.[2] In support of that conclusion, the ALJ cited treatment records, including from Dr. Davis, reflecting that Plaintiff was ambulating normally, had normal muscle strength and tone, normal gait and station, no falls, and no unsteadiness when walking or standing. AR 19 (citing AR 303; AR 299-300; AR 296; AR 537-538; AR 534; AR 530-531; AR 694; AR 690-691; AR 687 (Dr. Davis treatment notes from February 15, 2016, April 4, 2016, July 14, 2016, March 27, 2018, November 15, 2018, March 5, 2010, July 9, 2019, and August 12, 2019 reflecting normal ambulation, gait, station, strength, and tone)); AR 670 (April 5, 2019 medical record reflecting "steady, slow" gait); AR 628 (June 25, 2019 record reflecting normal strength in all extremities in the context of treatment following stepping on a nail); AR 491 (November 2018 hospital records reflecting normal range of motion and strength in the context of treatment for gastrointestinal bleed); AR 590 (May 16, 2019 follow up from stress fracture of the fifth metatarsal of the left foot indicting Plaintiff was advised to "increase activity as tolerated"); AR 477 (Dr. Ghaussy May 22, 2018 treatment record reflecting no falls in the past six months).

---

[2] The ALJ also stated that Dr. Davis' opinion that Plaintiff was disabled was an issue reserved to the Commissioner, and that he had "no inkling" what Dr. Davis meant by the term "limits." AR 19.

Plaintiff contends that the ALJ improperly "cherrypicked" portions of the treatment records to support his conclusions. Doc. 11-1 at 8-10. Plaintiff additionally argues that the May 16, 2019 reference to "activity as tolerated" was with respect to his healing stress fracture, and that while certain medical records reflect a normal gait, others show an assisted, antalgic gait. See AR 589, 591, and 593 (April 8, 2019, April 25, 2019, and May 16, 2019 treatment records following left foot stress fracture indicting Plaintiff exhibited an "assisted, antalgic gait").

"[T]he substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)). At the same time, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (remand appropriate because the same medical records that contained the "normal" findings relied upon by the ALJ also included notations that plaintiff presented with constant pain and was given a steroid injection); see also Arakas v. Commissioner, Social Security Administration, 983 F.3d 83,

7

99 (4th Cir. 2020) (vacating ALJ's decision where ALJ cherry picked certain facts and misstated and mischaracterized other material facts). In sum, while an ALJ is entitled to weigh contrary evidence when making a decision, the ALJ cannot ignore material evidence contrary to his or her decision.

Here, the ALJ cited evidence that supported his conclusion, but he did not acknowledge or discuss seemingly contrary information, even where such information appeared in some of the treatment records upon which the ALJ relied. See AR 296 (reflecting limited range of motion and tenderness); AR 300 (reflecting malalignment, tenderness, limited range of motion, and "terrible scoliosis"); AR 303 (limited range of motion); AR 537 (indicating in "History of Present Illness" section that Plaintiff needs to "use a cane so that he does not fall that is both a balance and weakness issue," that he has difficulty "walking for any extended period of time" or sitting more than 15 or 20 minutes, and concluding on physical exam that Plaintiff's "scoliosis is very obvious and looks like 2 major degree"); AR 687 & 691 (Plaintiff complained of bilateral leg pain, knee, pain, and thigh pain, with physical exam showing he was tender in the lower spine and low back, and that lifting his left leg "sent shocks up into his back").

Under these circumstances, the undersigned will recommend remand. See McNeill v. Saul, No. 5:20-CV-244-M, 2021 WL 3701348 at *6 (E.D.N.C. June 2, 2021), report and recommendation adopted, 2021 WL 3686244

(E.D.N.C. Aug. 19, 2021) (ALJ erred in his analysis of plaintiff's ankle swelling where he did not consider contrary findings); Lockerby v. Saul, No. 1:19-CV-00159-MOC, 2020 WL 506752 at *5 (W.D.N.C. Jan. 30, 2020) ("by failing to address evidence that was inconsistent with his finding of "improvement," the ALJ failed to consider all relevant evidence").

### 2. Dr. Najeeb Ghaussy

In a May 17, 2017 letter, Dr. Ghaussy stated that Plaintiff was "very limited in prolonged sitting or standing which prevents him from being able to work." AR 337. The ALJ found this opinion unpersuasive because "the ability to work is an issue reserved to the Commissioner," because the terms "very limited" and "prolonged" lacked specificity, and because "sitting, standing and walking limitations [were] inconsistent" with Dr. Davis' and Dr. Ghaussy's treatment records. See AR 18 (citing AR 685-699 (Dr. Davis); AR 338-356 (Dr. Ghaussy)).

The ALJ did acknowledge the arguably contrary findings in Dr. Ghaussy's treatment records. See AR 18-19 (acknowledging that Dr. Ghaussy noted Plaintiff's decreased range of motion in the lumbar spine and positive tender points).

However, the ALJ's treatment of Dr. Ghaussy's opinion was based, in part, on his view of Dr. Davis' opinions, which view did not appear to address contrary evidence, as discussed above. Therefore, the undersigned will

9

recommend remand so that Dr. Ghaussy's opinion can be reviewed more closely as well.³

### B. Use of a Cane

In addition to the medical opinions discussed above, in September of 2019, Dr. Davis signed prescriptions for a cane and a quad cane with a wide base. AR 585-586. Plaintiff argues that the ALJ failed to consider his need for a cane properly when developing Plaintiff's RFC.

With respect to the use of a cane, "a prescription or lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015); see also Jackson v. Kijakazi, No. 1:20CV592, 2021 WL 3037436, at *5 (M.D.N.C. July 19, 2021) ("'the legal issue does not turn on whether a cane was 'prescribed'…but whether a cane was 'medically required'") (quoting Spaulding v. Astrue, 379 Fed. Appx 776, 780 (10th Cir. 2010)).

---

³ Plaintiff additionally argues that the ALJ erred in his consideration of Dr. Ghaussy's opinion that Plaintiff would need to "rest away from the work station for significantly more than an hour during the working portion of the day" and would "have problems with attention and concentration sufficient to frequently interrupt tasks" during the workday. See AR 588. The Commissioner asserts that it was proper for the ALJ to rely on medical records reflecting that Plaintiff presented as oriented, with normal memory, concentration, and attention, and without fatigue. See AR 18 (citing AR 589 (May 16, 2019 treatment note); AR 591 (April 25, 2019 treatment note); AR 593 (April 8, 2019 treatment note); AR 687 (August 12, 2019 treatment note). Other treatment notes, though, do include Plaintiff's self-reports of fatigue. See AR 690 & 694.

10

Pursuant to Social Security Regulation ("SSR") 96-9p, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7; see also Fletcher, 2015 WL 4506699, at * 8 (quoting SSR 96-9p, 1996 WL 374185)).

"The claimant bears the burden of presenting 'medical evidence establishing the need for a cane and describing the circumstances for which it is needed.'" Gilmer v. Berryhill, No. 3:17-cv-539-FDW, 2018 WL 3518470, at *2 (W.D.N.C. July 20, 2018) (quoting SSR 96-9p).

In his decision, the ALJ stated that "the record is void of any references to claimant utilizing a cane," and that treatment records consistently indicated Plaintiff did not use ambulatory aids. See AR 17. The ALJ concluded that a cane was not necessary because "treatment records note no falls, no ambulatory aids, denies dizziness, no weakness, no shortness of breath when walking and no numbness all of which would infer the claimant does not need an assistive device." AR 19. In support of that statement, the ALJ cited certain treatment records. However, some records do include complaints of weakness, difficulty with weightbearing, and Plaintiff's use of a cane. See AR 537 (March

11

27, 2018 note indicating in "History of Present Illness" section that Plaintiff needs to "use a cane so that he does not fall that is both a balance and weakness issue"); AR 545 (December 17, 2018 treatment note reflecting Plaintiff complained of back pain, joint pain, and muscle weakness); AR 567 (June 22, 2018 emergency room report following complaints of lower extremity pain; reflecting Plaintiff "does not have any new numbness, tingle, weakness to his lower extremities" and that upon physical examination there was "some pain with range of motion left hip, and particularly with weightbearing"). Other records also reference Plaintiff's use of a cane. See AR 357 (March 12, 2018 consultative examination indicating that Plaintiff reports he "typically uses a cane to try to maintain balance and keep pressure off that hip if at all possible").

Here, as the ALJ did not discuss or reconcile this evidence with the contrary treatment notes upon which he relied, the undersigned will recommend remand on this basis as well. Compare Fletcher, 2015 WL 4506699, at *9 (remanding where ALJ repeatedly mentioned plaintiff's use of a walker but did not address whether a walker was medically necessary); Carver v. Berryhill, No. 1:17-cv-35-MOC, 2017 WL 4819111, at *4 (W.D.N.C. Oct. 25, 2017) ("The court agrees with plaintiff that the ALJ did not perform an analysis of the impact of plaintiff's assistive device on her RFC"); Nalley v. Saul, No. 1:18-cv-00301-FDW, 2019 WL 6598221 at *7 (W.D.N.C. Dec. 4, 2019)

12

("remand is appropriate because it is unclear whether Plaintiff has provided enough evidence to meet his burden of showing medical necessity for a cane"); with Gilmer, 2018 WL 3518470, at *2 ("This Court has held 'absent a doctor's prescription, a claimant's self-prescribed cane usage is merely a specific subjective complaint that must be substantiated by the objective medical evidence, and the ALJ is not obligated to perform a medical necessity analysis'") (quoting Christon v. Colvin, No. 3:15-CV-00305-RJC, 2016 WL 3436423, at *5 (W.D.N.C. June 15, 2016)).[4]

---

[4] The Commissioner asserts that Plaintiff was "recently prescribed" a cane and argues that during the "vast majority of the relevant period Plaintiff did not use an assistive device and does not appear to have been prescribed one either." Doc. 15 at 13. The ALJ, however, did not discuss the timing of Dr. Davis' prescription or otherwise distinguish between medical records within the "relevant period" and later-dated records. See Bailey v. Saul, No. 1:18-cv-00371-FDW, 2020 WL 1429240 at *10 (W.D.N.C. March 19, 2020) ("These arguments are not considered because courts do not allow *post hoc* theories by the government to support findings where an ALJ did not bother to raise them") (internal citations to administrative record omitted) (citing Cordova v. Holder, 759 F.3d 332, 338 (4th Cir. 2014) (citing Li Fang Lin v. Mukasey, 517 F.3d 685, 693 (4th Cir. 2008))).

## VI. Recommendation

Considering the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 11) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 14) be **DENIED**.

Signed: December 6, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).